23717.   BYRD v. BYRD.

ARGUED OCTOBER 12, 1966—DECIDED NOVEMBER 10, 1966.

*G. Hughel Harrison,* for appellant.

*Gary B. Blasingame, Briscoe & Blasingame,* for appellee.

ALMAND, Justice.  Ezma Boss Byrd brought a petition in De-Kalb Superior Court against James W. Jackson and J. B. Byrd seeking to cancel certain deeds to a described tract of land and to enjoin the plowing of a part of said land on the grounds that the deeds were procured through fraud.

The petition alleged the following case.  Defendant Jackson, plaintiff's grandson by marriage, had lived with plaintiff and her husband at one time, and they had come to love and trust him.  Plaintiff had been the owner of a described tract of 95 acres of land from November 1, 1926, until April 20, 1965, and on February 21, 1948, plaintiff executed a security deed on the property to secure an indebtedness of $1,308 owed to defendant J. B. Byrd.  In 1964, defendant Jackson advised that if plaintiff would give him the said 95 acres, he would pay off the indebtedness and build plaintiff and her husband a new home on the property.  On the consideration of these promises, plaintiff agreed to give Jackson a deed to the remainder interest in the property but reserve to herself a life estate.  Later, Jackson told the plaintiff that in order to build a house for her he would need fee simple title to the property in order to secure a loan.  Thereafter, plaintiff conveyed fee simple title to Jackson for $1.00 and other valuable consideration which is alleged to be the following promises made by Jackson to wit: "a. Notwithstanding plaintiff's giving to said defendant an absolute deed to her property, plaintiff and her husband would have complete and unimpaired possession of all of said land during their lifetime.  b. Defendant Jackson would not dispose of any of said land during the lifetime of plaintiff and her husband.  c. De-

fendant Jackson would immediately build plaintiff and her husband a new house on said land, and plaintiff and her husband would have possession of said house for and during their lifetime. d. During the lifetime of plaintiff and her husband, the said land would be theirs in the same manner as if plaintiff did not give defendant Jackson an absolute deed to the property, and said defendant would take no beneficial interest in said lands during the lifetime of plaintiff and her husband. e. During the lifetime of plaintiff and her husband, defendant Jackson would not use the said land in any manner for his own benefit, or for the benefit of anyone other than plaintiff and her husband. f. Defendant Jackson would satisfy at the rate of $50.00 per month the indebtedness owed by plaintiff and her husband to defendant Byrd, and, by this means exclusively, procure cancellation of the deed to secure debt by which said land was pledged to secure said indebtedness."

Subsequently, defendant Jackson, in consideration of defendant Byrd's cancellation of the 1948 security deed, gave his security deed to Byrd to secure a note of $2,987.96 payable in $50 monthly installments. This $2,987.96 was the same amount as was owed by the plaintiff to Byrd under the canceled security deed. Jackson failed to keep any of his promises, and on June 22, 1965, he conveyed by warranty deed 40 of the original 95 acres of land to Byrd in consideration of Byrd's (1) cancellation of Jackson's security deed, (2) payment to Jackson of $1,000 and (3) giving to Jackson a note for $1,500. Byrd was present at the time Jackson made the alleged promises to plaintiff, and it was alleged that Byrd had actual knowledge thereof.

Plaintiff later amended her petition and alleged that Byrd had begun to plow the said 40 acres then planted in a cover crop which afforded protection from erosion and was a good land builder. It was further alleged that it took many years to replace such a cover crop after its destruction and that Byrd was continuing to plow said 40 acres and to destroy said cover crop. The petition prayed that defendant Byrd be temporarily restrained and enjoined from plowing the said 40 acres during the pendency of the litigation.

Defendants filed their demurrers and answers to plaintiff's

original petition and denied all material allegations. No response was filed to plaintiff's amendment seeking the temporary injunction.

On April 18, 1966, the court entered a temporary restraining order and issued a rule nisi. After a hearing on the temporary injunction, the court, by an order dated May 13, 1966, continued the prior restraining order in force and ruled that the 40 acres be placed in the "soil bank" program until the final determination of the case. Defendant Byrd has appealed from this order and assigns it as error. No ruling was made on the demurrers.

The only issue before this court is whether or not the trial judge abused his discretion in granting the temporary injunction preserving the status quo of the parties. The petition and the answers were before the trial court, and they served the office of both pleadings and evidence on the interlocutory hearing. *Salter v. Ashburn,* 218 Ga. 62, 66 (2) (126 SE2d 404). There was also conflicting testimony at the hearing on the issues raised by the pleadings. As this court said in *Waddell v. Goldin,* 211 Ga. 820 (89 SE2d 170), "it would serve no useful purpose to review the evidence, or discuss the questions of law argued by counsel . . . in their brief, for the reason that the evidence on the material issues of fact is conflicting, and in such a situation it cannot be said that the trial judge abused his discretion. . . . *Mobley v. Brundage,* 170 Ga. 829 (154 SE 452); *Fuller v. Goldberg,* 171 Ga. 696 (156 SE 582); *Malone v. Glover,* 173 Ga. 780 (161 SE 602); *Hardy v. Thomas,* 208 Ga. 752 (69 SE2d 609)."

*Judgment affirmed. All the Justices concur.*